## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| TEXAS,<br><br>　　　*Plaintiff,*<br><br>v.<br><br>TRAVIS COUNTY, TEXAS; SALLY HERNANDEZ, in her official capacity as Sheriff of Travis County, Texas; CITY OF AUSTIN, TEXAS; ORA HOUSTON, DELIA GARZA, SABINO RENTERIA, GREGORIO CASAR, ANN KITCHEN, JIMMY FLANNIGAN, LESLIE POOL, ELLEN TROXCLAIR, KATHIE TOVO, and ALISON ALTER, all in their official capacities as City Council Members of the City of Austin, Texas; STEVE ADLER, in his official capacity as Mayor of the City of Austin, Texas; ELAINE HART, in her official capacity as Interim City Manager of the City of Austin, Texas; and the MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND,<br><br>　　　*Defendants.* | Civ. Action No. 1:17-cv-425<br><br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Texas, by and through its Attorney General, and for its Complaint against the Defendants, states as follows:

## INTRODUCTION

1.　　The federal government recognizes that cooperation by Texas "is necessary to preserve the Federal Government's ability to enforce the immigration

laws."[1] Texas possesses an independent, sovereign responsibility to protect the health, welfare, and safety of its residents. Texas, cognizant of this duty, enacted Senate Bill 4 ("SB 4") to affirm its policy of cooperation with federal immigration authorities.

2.      Prior to SB 4, many, but not all, Texas law enforcement agencies worked cooperatively with federal immigration authorities on a regular basis. Often, this meant officers detaining an individual pursuant to a request from Immigration and Customs Enforcement ("ICE") so that those who flout immigration law cannot slip through the cracks of the justice system.

3.      Notably, Travis County, Texas and its Sheriff, Sally Hernandez, are publicly hostile to cooperation with federal immigration enforcement. Both in policy and practice, and through various public statements, Travis County, Texas openly rejects even routine cooperation with federal immigration officials.

4.      Likewise, the City of Austin, Texas, its City Council, and executives with discretionary authority provided by the Texas Local Government Code are publicly hostile to cooperation with federal immigration enforcement. Both in policy and practice, and through various public statements, the City of Austin, Texas and its officials openly reject even routine cooperation with federal immigration officials.

5.      The Mexican American Legal Defense and Education Fund is publicly hostile to cooperation with federal immigration enforcement and through various public statements that it is going to sue Texas over the constitutionality of SB 4.

6.      Among other things, SB 4 requires local law enforcement agencies to cooperate with federal immigration authorities; prohibits them from preventing officers from inquiring into someone's immigration status; requires them to comply

---

[1] *See, e.g.,* Br. of United States as Amicus Curiae in Support of Neither Party at 1–2, *Massachusetts v. Lunn*, No. SJC-12276, 2017 WL 1240651, at *1–2 (Mass. 2017).

with ICE detainers; and requires early release to federal authorities for incarcerated persons subject to ICE detainers.

7.       With the passage of SB 4, Texas, pursuant to the Texas Constitution, and the powers reserved to it under the Tenth Amendment of the United States Constitution, took measures to ensure cooperation with federal immigration officials as they enforce immigration law.

8.       Defendants' policies and practices of noncooperation with federal immigration officials remain in place.

9.       This action is premised on the United States Constitution concerning rights reserved to Texas under the Tenth Amendment, the power of the United States to "establish an uniform Rule of Naturalization," Art. I, § 8, cl. 4, the right to be secure from unlawful searches and seizures under the Fourth Amendment, and equal protection of law under the Fourteenth Amendment.

10.      Defendants flout the policies mandated by Texas law and object that the legislation is unconstitutional. On information and belief, Defendants will sue Texas regarding the constitutionality of Texas law, as described herein.

11.      Each and every act of Defendants, past and ongoing, alleged herein was and is committed by Defendants, each and every one of them, under the color of Texas law and authority.

## JURISDICTION AND VENUE

12.      This action raises federal questions under the United States Constitution, particularly Article I and the Fourth, Tenth, and Fourteenth Amendments, as well as 42 U.S.C. § 1983. The Court has the authority to provide Texas with declaratory relief. *See Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 388 (5th Cir. 2003); *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 591 (5th Cir. 1994); *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc*., 996 F.2d 774, 776–77 (5th Cir. 1993). Consistent with the purposes of the Declaratory Judgment Act, Texas brings

this action "to avoid a multiplicity of suits in various forums . . . so that the one pertinent issue . . . [can] be resolved consistently in one, rather than multiple, forums." *Travelers*, 996 F.2d at 777.

13.    The Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343.

14.    The Court has authority to award the requested declaratory relief pursuant to 28 U.S.C. § 2201–02.

15.    Venue lies in this district pursuant to 28 U.S.C. § 1391 because Defendants reside in this district and/or all of the acts described in this Complaint occurred in this district.

## PLAINTIFF

16.    Plaintiff Texas is a free and independent sovereign, subject only to the Constitution of the United States. Tex. Const. art. I, § 1.

17.    Texas has the sovereign authority and responsibility to protect the health, safety, and welfare of its residents. *See, e.g.*, *Texas v. Richards*, 301 S.W.2d 597, 602 (Tex. 1957) ("As a general rule the [police] power is commensurate with, but does not exceed, the duty to provide for the real needs of the people in their health, safety, comfort and convenience . . . ."); *Lombardo v. City of Dall.*, 73 S.W.2d 475, 479 (Tex. 1934) ("[T]he police power of a state embraces regulations designed to . . . promote the public health, the public morals, or the public safety.").

18.    To that end, Texas exercises its police power through state and local law enforcement agencies, cooperating with federal authorities, in the enforcement of immigration law.

19.    Texas possesses the sovereign authority to pass civil and criminal laws that bind the actions and responsibilities of law enforcement agencies throughout Texas, as it has done through SB 4, among other laws.

4

## DEFENDANTS

20.    Defendant Travis County, Texas is, at all times relevant to this Complaint, a county located in Texas that openly refuses to enforce or otherwise comply with Texas law.

21.    Defendant Sally Hernandez is, at all times relevant to this Complaint, the Sheriff of Travis County.

22.    Defendant Hernandez is the final policymaker for actions of the Travis County's Sheriff's Office.

23.    Defendant Hernandez is responsible for the enactment and enforcement of the Travis County's Sheriff's Office's policies and practices, including those governing compliance with Texas law and federal immigration detainers.

24.    All changes in Travis County's Sheriff's Office's policy or practice are made only with the prior approval of Defendant Hernandez.

25.    Defendant Hernandez is sued in her official capacity.

26.    Defendant City of Austin, Texas is a home rule municipality, headquartered in Travis County, Texas, that openly refuses to comply with Texas law.

27.    Defendants Ora Houston, Delia Garza, Sabino Renteria, Gregorio Casar, Ann Kitchen, Jimmy Flannigan, Leslie Pool, Ellen Troxclair, Kathie Tovo, and Alison Alter ("City Council Defendants") are, at all times relevant to this Complaint, city council members of the City of Austin, Texas and openly refuse to comply with Texas law.

28.    The City Council Defendants are the final policymakers for actions of the City of Austin, Texas.

29.    The City Council Defendants are responsible for the enactment and enforcement of the City of Austin's policies and practices, including those governing compliance with Texas law and federal immigration detainers.

30.     All changes in the City of Austin's policies or practices are made only with the prior approval of the City Council Defendants.

31.     The City Council Defendants are sued in their official capacities.

32.     Defendant Steve Adler is, at all times relevant to this Complaint, the Mayor of the City of Austin, Texas.

33.     Defendant Adler is the chief executive officer of the City of Austin, Texas.

34.     Defendant Adler ensures that the laws and ordinances of the municipality are properly carried out. He also performs duties and exercises the powers prescribed by the City Council Defendants.

35.     Defendant Adler inspects the conduct of each subordinate municipal officer and causes any negligence, carelessness, or other violation of duty to be prosecuted and punished.

36.     Defendant Adler gives to the governing body any information, and recommends to the governing body any measure, that relates to improving the finances, police, health, security, cleanliness, comfort, ornament, or good government of the municipality.

37.     To preserve the peace and good order in the municipality, Defendant Adler may order the arrest of a person who violates Texas law or a municipal ordinance.

38.     Defendant Adler is responsible for enactment and enforcement of City of Austin's policies and practices, including those governing compliance with Texas law and federal immigration detainers.

39.     All changes in City of Austin's policy or practice are made only with the prior approval of Defendant Adler.

40.     Defendant Adler is sued in his official capacity.

41.     Defendant Elaine Hart is, at all times relevant to this Complaint, the interim City Manager of the City of Austin, Texas.

42.     Defendant Hart administers the municipal business and the governing body of the municipality ensures that the administration is efficient.

43.     The City Council Defendants may delegate to Defendant Hart any additional powers or duties the City Council Defendants consider proper for the efficient administration of municipal affairs.

44.     Defendant Hart is responsible for enforcement of City of Austin's policies and practices, including those governing compliance with Texas law and federal immigration detainers.

45.     Defendant Hart is sued in her official capacity.

46.     Defendant Mexican American Legal Defense and Education Fund ("MALDEF") is a charitable organization under 501(c)(3) of the Internal Revenue Code. MALDEF describes itself as the nation's leading Latino legal civil rights organization. MALDEF asserts that it promotes social change through advocacy, communications, community education, and litigation in the areas of education, employment, immigrant rights, and political access.

## FACTUAL BACKGROUND

### The Cooperative Nature of Immigration Law

47.     The United States Constitution grants the federal government authority over immigration law and policy.

48.     Congress specifies categories of aliens who may not be admitted to the United States. *See* 8 U.S.C. § 1182.

49.     Federal law prohibits unlawful entry and unlawful reentry into the country. *Id.* §§ 1325, 1326.

50.     Once here, aliens must register with the federal government and carry proof of status on their person. *Id*. §§ 1301–1306. Failure to do so is a federal misdemeanor. *Id*. §§ 1304(e), 1306(a).

51.     Federal immigration law also authorizes Texas to deny noncitizens a range of public benefits, *id*. § 1622, and it imposes sanctions on employers who hire unauthorized workers, *id*. § 1324a.

52.     Congress specifies which aliens may be removed from the United States and the procedures for doing so. Aliens may be removed if they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law. *Id*. § 1227.

53.     Components of the U.S. Department of Homeland Security play a major role in enforcing immigration laws.

54.     ICE conducts criminal investigations involving the enforcement of immigration-related statutes.

55.     ICE also operates the Law Enforcement Support Center, which provides immigration status information to federal, state, and local officials.

56.     ICE officers identify, apprehend, and remove illegal aliens from the United States.

57.     ICE officers have the authority to arrest any alien pursuant to a warrant or if they have "reason to believe" the alien is in the United States without permission and is "likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2).

58.     Any authorized ICE officer may issue a Form I–247, Immigration Detainer–Notice of Action, to any other federal, state, or local law enforcement agency (herein, "ICE detainer"). 8 C.F.R. § 287.7(a).

59.     ICE detainers are supported by probable cause.

60.     An ICE detainer advises other law enforcement agencies that ICE seeks the custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. *Id.*

61.     An ICE detainer is a request that such agency advise ICE prior to releasing the alien, so that ICE may arrange to assume custody. *Id.*

62.     An ICE detainer also commonly asks the local law enforcement agency to hold the person for up to 48 hours in order to assume custody. *Id.* § 287.7(d).

63.     As of April 2, 2017, the ICE detainer policy requires "[a]ll immigration officers must establish probable cause to believe that the subject is an alien who is removable from the United States before issuing a detainer with a federal, state, local, or tribal [law enforcement agency]."[2]

64.     The new ICE policy requires that all ICE detainers be accompanied by one of two types of Federal immigration warrants, which is signed by an authorized ICE immigration officer. *Id.*

65.     Congress authorized Federal immigration officials to "arrest[] and detain[]" an alien while awaiting a removal decision pursuant to "a warrant issued by the Attorney General." 8 U.S.C. § 1226(a).

66.     Immigration law welcomes the cooperation of Texas law enforcement with requests like ICE detainers.

67.     The United States Attorney General can enter into a "written agreement" with Texas or any political subdivision of Texas, which deputizes state or local law enforcement officers as immigration officers. *Id.* § 1357(g)(1).

68.     In these instances, Texas state and local officers are "considered to be acting under color of Federal authority." *Id.* § 1357(g)(8).

---

[2] ICE Policy 10074.2, *Issuance of Immigration Detainers by ICE Immigration Officers* ¶ 2.4 (last visited May 7, 2017), https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf.

69.     Even absent a written agreement, Texas and local law enforcement officers may become deputized to "cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id*. § 1357(g)(10).

70.     "State and local law enforcement officials are authorized to arrest and detain" an individual who is "an alien illegally present in the United States" and "has been previously convicted of a felony in the United States and deported or left the United States after such conviction." 8 U.S.C. § 1252c(a).

### Texas's Practice of Cooperating with Federal Immigration Authorities

71.     For some time now, law enforcement agencies across Texas have held persons in custody for up to 48 hours based on ICE detainers, and they do so to cooperate with federal agencies as well as fulfill the requirements of Texas law.

72.     Between 2011 and 2017, over 212,000 criminal aliens were booked into Texas jails.

73.     Texas places statutory duties on agencies, such as the Texas Department of Public Safety ("DPS"), the Texas Department of Criminal Justice ("TDCJ"), and the Texas Commission on Jail Standards ("TCJS"), as well as subdivisions such as Travis County and the City of Austin, to cooperate with federal immigration officials with respect to persons in their custody.

74.     Texas law charges DPS with authority to enforce "laws protecting public safety and provide for the prevention and detection of crime." Tex. Gov't Code § 411.002(a).

75.     DPS "is composed of the Texas Rangers, the Texas Highway Patrol," and other administrative divisions. *Id*.

76.     The Texas Rangers have the same powers and duties of sheriffs, except their authority extends throughout Texas. *Id*. § 411.022(a).

77.    The Texas Highway Patrol has the same powers and authority as the Texas Rangers, in addition to other powers and duties provided by law. *Id.* § 411.032.

78.    Texas law requires DPS to cooperate with local law enforcement.

79.    "The sheriff and constables of each county and chief of police of each municipality are associate members of the department and are entitled to the rights and privileges granted to them by the department." *Id.* § 411.009(a).

80.    The director of DPS implements coordination among peace officers throughout Texas and may require the assistance of those officers "to aid or assist in the performance of a duty imposed" by Texas law. *Id.* § 411.009(b).

81.    Law enforcement agencies throughout Texas cooperate together and share responsibility to enforce the law.

82.    This nexus of cooperation extends to the federal level as well, especially with respect to the identification of aliens.

83.    DPS coordinates with federal and local authorities at international border checkpoints and shares the costs of those efforts with the federal government. Tex. Gov't Code § 411.0209.

84.    In furtherance of this cooperation, DPS has a program for preventing and detecting the unlawful movement or transfer between Texas and an adjacent state, or between Texas and the United Mexican States, of firearms, controlled substances, currency, or smuggling or trafficking of persons. *Id.* § 411.0208(a).

85.    DPS implements this program "in conjunction with federal and local law enforcement agencies." *Id.* § 411.0208(d).

86.    The DPS Border Security Operations Center coordinates Operation BorderStar to collect intelligence and statistical information, which is shared with federal, state, and local law enforcement each week.

87.    Because of the responsibilities and duties placed on DPS by Texas law, uniform cooperation with federal immigration officers is of vital importance to Texas.

88.     Once individuals are in custody, counties, Rangers, Highway Patrol, and local police can run their fingerprints through DPS systems, which notify federal immigration officers of any potential aliens in custody.

89.     DPS's Bureau of Identification and Records collects information of all persons arrested, *id*. § 411.042(b)(1), maintains a database of criminal history that allows for entry of records into an FBI database, *id*. § 411.042(b)(9), and serves as a clearinghouse for local law enforcement to check fingerprints against federal databases at FBI and the Department of Homeland Security.

90.     When the accused stand trial and are found guilty, Texas judges must notify federal immigration officers of those who are criminal aliens, as defined by Texas law. Tex. Code Crim. Proc. art. 2.25 ("A judge shall report to the United States Immigration and Naturalization Service a person who has been convicted in the judge's court of a crime or has been placed on deferred adjudication for a felony and is an illegal criminal alien as defined by Section 493.015(a), Government Code.").

91.     TCJS monitors the use of county jails for ICE detentions. Tex. Gov't Code § 511.0101(a)(1)(J).

92.     Texas law also requires the prison system to cooperate with immigration officers.

93.     TDCJ must "cooperate with the [U.S.] Immigration and Naturalization Service in implementing an efficient system for the deportation of illegal criminal aliens on completion of the inmates' sentences or release of the inmates on parole or mandatory supervision." Tex. Gov't Code § 493.015(g).

94.     As of December 2015, over 9,000 Texas prisoners were under an ICE detainer of some kind, and ICE determined more than 6,000 of them to be unlawfully present.

95.     Texas law obligates TDCJ to "identify those inmates who" may be "an illegal criminal alien" in their custody. *Id*. § 493.015(b).

12

96.     If a person in custody is determined to be an illegal criminal alien, TDCJ "shall promptly notify" INS. *Id*. § 493.015(d).

97.     TDCJ also "shall promptly notify the criminal justice division of the governor's office of any inmate determined by [TDCJ] or by [INS] to be an illegal criminal alien," and the "governor's office shall apply to the federal government for any funds due the state for criminal justice costs incurred with respect" to that person. *Id*. § 493.015(e).

98.     TDCJ also provides facilities as central locations to "hold inmates who are illegal criminal aliens for the period immediately preceding release on parole or mandatory supervision," and provides "two-way closed circuit communications systems and other technology that will assist the state and the federal government in ensuring the timely and efficient deportation of illegal criminal aliens." *Id*. § 493.015(g)(1–2).

99.     Texas possesses an interest in consistency in law enforcement, as evidenced by the standards and supervision exercised by TCJS.

100.    Among other things, TCJS establishes reasonable rules and minimum standards for the construction, maintenance, and operation of county jails, as well as for the custody, care, and treatment of prisoners. Tex. Gov't Code § 511.009(a).

101.    TCJS also monitors the use of state and county jails for ICE detentions and calculates the costs of those detentions. *Id*. § 511.0101(a)(1)(J).

### Enactment of SB 4

102.    Notwithstanding Texas's longstanding practice to cooperate with federal immigration authorities, some local law enforcement entities and leaders voice opposition to this practice. This includes opposing cooperation with ICE detainers.

103.    Defendant Travis County has a policy and practice of ignoring ICE detainer requests and refusing to cooperate with federal immigration officials.

104.   Defendants Travis County, Hernandez, and other county officials, publicly endorse and engage in patterns and practices of ignoring ICE detainer requests and not cooperating with federal officials.

105.   On February 1, 2017, well after SB 4 was introduced in the Texas Legislature, Defendant Hernandez issued a revised, written policy concerning Travis County's non-cooperation with federal immigration authorities. Under the policy, Travis County shall not cooperate with federal immigration officials and their lawful activities, except in limited circumstances determined solely by the Travis County and its sheriff. As of today, that policy remains in place, unaffected by SB 4.

106.   Defendant Hernandez described the County's policy in a publicly available video statement: The Travis County Sheriff's Office will not "conduct or initiate any immigration status investigation" into those in custody. The Travis County Sheriff's Office prohibits the use of county resources to communicate with ICE about an "inmate's release date, incarceration status, or court dates, unless ICE presents a judicial warrant or court order." Absent such a warrant or order, ICE will not be allowed to conduct "civil immigration status investigations at the jail or [Travis County Sheriff's Office]." Further "no [Travis County Sheriff's Office] personnel in the jail, on patrol, or elsewhere may inquire about a person's immigration status."[3]

107.   Travis County Judge Sarah Eckhardt publicly endorsed Travis County's policy and practice:

> Place of birth alone is no indication that a person is a threat to public safety under the criminal laws of Texas or is in violation of immigration laws of the U.S. Under both Texas and U.S. Constitutions, jailers and immigration agents do not determine probable cause to detain a person. Only a judge can make that determination. It's called a warrant. I fully

---

[3] Travis County Sheriff's Office, ICE Policy Video, *at* http://www.tcsheriff.org/inmate-jail-info/ice-video (last visited May 6, 2017).

support Sheriff Hernandez requiring a warrant to deprive anyone of his or her liberty under the 4th Amendment of the U.S. Constitution.[4]

108.    Defendant Travis County's failure to cooperate with federal immigration officials is pervasive. According to a report by the U.S. Department of Homeland Security, of 206 detainer requests denied between January 28 and February 3, 2017, Travis County declined 142 requests to hold unauthorized immigrants, or about 69%, which is more than any other local jurisdiction.

109.    Defendant Travis County's deliberate failure to cooperate with federal immigration officials hampers the federal government's ability to exercise its constitutional authority to make removal decisions. *Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012).

110.    Defendant Travis County's policy and practice undermines the fundamental principle that foreign countries "must be able to confer with one national sovereign, not the 50 separate States"—much less countless local governments. *Id.* at 2498.

111.    Defendant City of Austin has a policy and practice of ignoring ICE detainer requests and refusing to comply with federal immigration officials.

112.    Defendants City of Austin, Adler, and Hart, the City Council Defendants, and other city officials publicly endorse and engage in patterns and practices of ignoring ICE detainer requests and not cooperating with federal officials.

113.    On information and belief, Defendants City of Austin, Adler, Hart, and the City Council Defendants will sue Texas over the passage of SB 4.

---

[4] Casey Claiborne, *Travis Co. Commissioners discuss Hernandez ICE policy*, FOX 7 (Jan. 24 2017, 06:20 PM), http://www.fox7austin.com/news/local-news/231502450-story (last visited May 6, 2017).

114.   Defendant MALDEF publicly declared imminent legal action against Texas regarding the constitutionality of the Texas law described herein.[5]

115.   In order to unify Texas policy, and solidify cooperation with federal immigration law, Senate Bill 4 is Texas law as of May 7, 2017. A true and correct copy of SB 4 is attached to this Complaint as Exhibit 1.

### SB 4 Prohibits Local Policies that Refuse to Cooperate with Enforcement of Immigration Law

116.   SB 4 states that a:

local entity or campus police department may not: (1) adopt, enforce, or endorse a policy under which the entity or department prohibits or materially limits the enforcement of immigration laws; (2) as demonstrated by pattern or practice, prohibit or materially limit the enforcement of immigration laws; or (3) for an entity that is a law enforcement agency or for a department, as demonstrated by pattern or practice, intentionally violate Article 2.251, Code of Criminal Procedure.

Ex. 1 § 752.053.

117.   SB 4 prohibits local law enforcement agencies from adopting, enforcing, or endorsing a policy that limits the enforcement of federal immigration laws.

118.   SB 4 also states:

a local entity or campus police department may not prohibit or materially limit a person who is a commissioned peace officer described by Article 2.12, Code of Criminal Procedure, a corrections officer, a booking clerk, a magistrate, or a district attorney, criminal district attorney, or other prosecuting attorney and who is employed by or otherwise under the direction or control of the entity or department from doing any of the following:

(1) inquiring into the immigration status of a person under a lawful detention or under arrest;

(2) with respect to information relating to the immigration status, lawful or unlawful, of any person under a lawful detention or under arrest, including information regarding the person's place of birth:

---

[5] *See, e.g.*, Press Release, MALDEF Statement on Texas SB 4 "Sanctuary Cities" Bill (May 4, 2017), http://www.maldef.org/news/releases/2017_5_4_MALDEF_Statement_on_TX_SB_4_Sanctuary_Cities_Bill/; Mercedes Olivera, *Legal fight on SB 4 gears up*, Dallas Morning News, May 6, 2017.

(A) sending the information to or requesting or receiving the information from United States Citizenship and Immigration Services, United States Immigration and Customs Enforcement, or another relevant federal agency;

(B) maintaining the information; or

(C) exchanging the information with another local entity or campus police department or a federal or state governmental entity;

(3) assisting or cooperating with a federal immigration officer as reasonable or necessary, including providing enforcement assistance; or

(4) permitting a federal immigration officer to enter and conduct enforcement activities at a jail to enforce federal immigration laws.

*Id.* § 752.053.

119.   SB 4 bans local law enforcement agencies from prohibiting or limiting their officers or employees from inquiring into a person's immigration status when that person is under lawful detention or arrest.

120.   SB 4 bans local law enforcement agencies from prohibiting or limiting their officers or employees from sharing immigration status of a person with federal authorities, collecting a person's immigration status, or exchanging that information with another local law enforcement agency.

121.   SB 4 bans local law enforcement agencies from prohibiting or limiting their officers or employees from cooperating with federal immigration officers.

122.   SB 4 bans local law enforcement agencies from prohibiting or limiting their officers or employees from permitting federal immigration officers to enter and conduct enforcement activities within their jails.

123.   SB 4 permits a peace officer, while investigating an alleged criminal offense, to inquire as to the nationality or immigration status of a victim or witness to the offense only if it is necessary to investigate the offense or to provide the victim or witness with information about federal visas designed to protect individuals providing assistance to law enforcement. *Id.* art. 6, § 6.01.

124.   SB 4 also states that a "local entity, campus police department, or a person employed by or otherwise under the direction or control of the entity or

department may not consider race, color, religion, language, or national origin while enforcing immigration laws except to the extent permitted by the United States Constitution or Texas Constitution." *Id*. § 752.054.

125.   SB 4 prohibits unlawful discrimination based on race, color, religion, language, or national origin.

126.   Any person residing within the jurisdiction of the local law enforcement agency may file a complaint about that agency with the Attorney General of Texas, who may seek equitable relief in court against that agency to compel compliance with the law. *Id*. § 752.055.

127.   A local law enforcement agency found in violation of SB 4 is subject to civil penalties in an amount "(1) not less than $1,000 and not more than $1,500 for the first violation; and (2) not less than $25,000 and not more than $25,500 for each subsequent violation." *Id*. § 752.056(a)(1–2). Each day a local law enforcement agency violates SB 4 "constitutes a separate violation for the civil penalty under this section." *Id*. § 752.056(b).

128.   Civil penalties collected under SB 4 are deposited into the victims of crime fund established under Subchapter B, Chapter 56, Code of Criminal Procedure.

129.   SB 4 states that "a person holding an elective or appointive office of a political subdivision of this state does an act that causes the forfeiture of the person's office if the person violates Section 752.053." *Id*. § 752.0565(a).

130.   Under SB 4, elective or appointed officials of a political subdivision may be removed from office if he or she prohibits officers or employees from:

    a) inquiring into a person's immigration status if that when that person is under lawful detention or arrest;

    b) sharing immigration status of a person with federal authorities, maintain a person's immigration status, or exchanging that information with another local law enforcement agency;

    c) cooperating with federal immigration officers; and

    d) permitting federal immigration officers to enter and conduct enforcement activities within their jails.

*Id.*

131.   The Attorney General of Texas is charged with authority to enforce section 752.0565(a). *Id.* § 752.0565(b).

132.   SB 4 states that each local law enforcement agency:

> may adopt a written policy requiring the agency to perform community outreach activities to educate the public that a peace officer may not inquire into the immigration status of a victim of or witness to an alleged criminal offense unless . . . the officer determines that the inquiry is necessary to: (1) investigate the offense; or (2) provide the victim or witness with information about federal visas designed to protect individuals providing assistance to law enforcement.

*Id.* § 752.057(a).

133.   Any outreach policy adopted under section 752.057 must include outreach to victims of family violence and sexual assault. *Id.* § 752.057(b).

134.   SB 4 also provides grants to local law enforcement entities to offset costs related to enforcing immigration laws, or complying with, honoring, or fulfilling immigration detainer requests. *Id.* § 772.0073(b).

### SB 4 Requires Cooperation with ICE Detainers

135.   SB 4 states that a

> law enforcement agency that has custody of a person subject to an immigration detainer request issued by United States Immigration and Customs Enforcement shall: (1) comply with, honor, and fulfill any request made in the detainer request provided by the federal government; and (2) inform the person that the person is being held pursuant to an immigration detainer request issued by United States Immigration and Customs Enforcement.

*Id.* art. 2.251(a).

136.   SB 4 requires law enforcement agencies holding a person subject to an ICE detainer to comply with, honor, and fulfill that request and inform the person in custody that he or she is being held pursuant to an ICE detainer.

137.   A law enforcement agency is not required to comply with an ICE detainer if the person in custody proves his or her United States citizenship, or lawful immigration status, through government-issued identification. *Id.* art. 2.251(b).

138.   SB 4 provides grants to local law enforcement entities to offset costs related to enforcing immigration laws, or complying with, honoring, or fulfilling immigration detainer requests. *Id.* § 772.0073(b).

139.   SB 4 authorizes the Attorney General of Texas to defend a local entity in any action in any court if the local entity requests help and if the Attorney General determines that the local entity was attempting to comply in good-faith with an ICE detainer. *Id.* § 402.0241.

140.   SB 4 provides that it is a Class A misdemeanor for a sheriff, chief of police, constable, or person who has primary authority for administering a jail to knowingly fail to comply with an ICE detainer request issued concerning a person in his or her custody, unless the person in custody proves his or her lawful citizenship or immigration status. *Id.* § 39.07.

## SB 4 Requires Early Release of Incarcerated Persons Subject to ICE Detainers to Federal Authorities

141.   SB 4 also provides that an incarcerated individual who is subject to an ICE detainer may be transferred from a Texas correctional facility to federal authorities during the last seven (7) days of the individual's sentence.

142.   SB 4 states:

In a criminal case described by Subsection (a) [where the judgment requires the defendant to be confined in a correctional facility and the defendant is subject to an immigration detainer request], the judge shall, at the time of pronouncement of a sentence of confinement, issue an order requiring the secure correctional facility in which the defendant is to be confined and all appropriate government officers, including a sheriff, a warden, or members of the Board of Pardons and Paroles, as appropriate, to require the defendant to serve in federal custody the final portion of the defendant's sentence, not to exceed a period of seven days, following the facility's or officer's determination

20

that the change in the place of confinement will facilitate the seamless transfer of the defendant into federal custody. In the absence of an order issued under this subsection, a facility or officer acting under exigent circumstances may perform the transfer after making the determination described by this subsection. This subsection applies only if appropriate officers of the federal government consent to the transfer of the defendant into federal custody under the circumstances described by this subsection.

*Id*. art. 42.039.

### Defendants' Assertion that SB 4 Violates the Constitution

143.   Defendants Travis County and Sheriff Hernandez have a policy or practice of refusing to comply with SB 4.

144.   Defendant Hernandez asserts that Travis County has a policy or practice of instructing its officers or employees not to comply or enforce ICE detainers.

145.   Travis County, through its officials, publicly pronounced the belief that ICE detainers are unconstitutional.

146.   Defendants City of Austin, Adler, Hart, and the City Council Defendants have a policy or practice of refusing to comply with SB 4.

147.   The City of Austin, the City Council, the Mayor, and the City Manager publicly pronounced the belief that ICE detainers are unconstitutional.

148.   Defendants will sue Texas over the constitutionality of SB 4.

149.   On information and belief, Defendants aver that Texas law and SB 4 are unconstitutional.

### ALLEGATIONS OF LAW

150.   At all times relevant to this Complaint, each and all of the acts alleged herein are attributed to the Defendants who acted under color of a statute, regulation, custom, or usage of Texas.

151.   Defendants are aware that, by refusing to comply with SB 4, they are in violation of Texas law.

152.   Defendants are aware that SB 4 is valid under the United States Constitution.

153.   Texas has no adequate or speedy remedy at law to correct or redress these violations of Texas law.

154.   Until SB 4 is declared constitutional, Defendants will continue with their unlawful policy or practice.

### FIRST CAUSE OF ACTION
### Fourth Amendment Right to Protection Against
### Unreasonable Searches and Seizures

155.   Texas incorporates by reference as if set forth fully herein paragraphs 1 to 154.

156.   The Fourth Amendment, incorporated and made applicable to Texas by the Fourteenth Amendment to the United States Constitution, prohibits unreasonable searches and seizures.

157.   To establish a claim for unreasonable seizure, one must show that an arrest is unreasonable.

158.   A warrantless arrest is considered unreasonable if, at the moment of the arrest, there is no probable cause for the peace officer to reasonably believe that an unlawful act has been or is being committed.

159.   Probable cause does not require proof beyond a reasonable doubt, but only a showing of a fair probability of unlawful activity.

160.   The reasonableness of an arrest must also be judged based on what a reasonable peace officer would do under the circumstances, and does not consider the officer's state of mind.

161.   The question is whether a reasonable officer believes that the law was violated based on the facts available to that officer.

162.    Defendants assert that SB 4 violates the Fourth Amendment because it requires them to participate in an ICE detainer, which they attest is an unreasonable seizure.

163.    ICE detainers may be issued for civil or criminal immigration law violations.

164.    Whether an ICE detainer is civil or criminal in nature, it must be supported by probable cause.

165.    ICE makes the determination of whether it has probable cause to issue a detainer and will not issue a detainer without probable cause. Current ICE policy further reflects this probable-cause requirement, as ICE will not issue a detainer without an accompanying Federal immigration warrant signed by an authorized ICE immigration officer.

166.    ICE detainers, therefore, are supported by probable cause established by ICE officers under federal law.

167.    SB 4's requirement that local law enforcement cooperate with ICE detainers does not violate the Fourth Amendment's prohibition on unreasonable seizures.

168.    SB 4 does not violate the Fourth Amendment.

169.    Texas has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

170.    Texas has no adequate remedy at law.

171.    Absent declaratory relief, Texas will continue to be harmed.

### SECOND CAUSE OF ACTION
### Fourteenth Amendment Right to Equal Protection of Law

172.    Texas incorporates by reference as if set forth fully herein paragraphs 1 to 171.

173.   The Fourteenth Amendment to the United States Constitution guarantees persons the equal protection of the laws, and prohibits the government from treating persons differently than a similarly situated individual.

174.   Laws are not unconstitutional under the Fourteenth Amendment if they result in a racially disproportionate impact.

175.   Representatives of Defendants publicly assert that Texas enacted SB 4 with a discriminatory purpose that violates the Fourteenth Amendment.

176.   SB 4's requirement that local law enforcement cooperate with federal authorities in the enforcement of immigration laws does not have a discriminatory purpose.

177.   SB 4's requirement that local law enforcement not prevent peace officers from verifying immigration status of a person does not have a discriminatory purpose.

178.   Racial discrimination is not a substantial or motivating factor behind SB 4 and Texas law.

179.   The historical background of SB 4 does not indicate discriminatory intent.

180.   Texas enacted SB 4 to set a policy of cooperation with federal immigration authorities, not to discriminate against one particular race or group of people.

181.   The enactment of SB 4 did not deviate from the normal procedural sequence of passing laws in Texas.

182.   SB 4 does not bear more heavily on persons from one race than another.

183.   Any discriminatory intent present within ICE detainers is solely the result of decisions made by federal immigration officers, not Texas law enforcement.

184.   SB 4 does not violate the Fourteenth Amendment.

185.   Texas has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

186.   Texas has no adequate remedy at law.

187.   Absent declaratory relief, Texas will continue to be harmed.

### THIRD CAUSE OF ACTION
**Federal Preemption**

188.   Texas incorporates by reference as if set forth fully herein paragraphs 1 to 187.

189.   The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.

190.   The Supremacy Clause provides that federal law may expressly or impliedly preempt Texas or local laws.

191.   Generally, Texas can assert a preemption argument in a claim for injunctive relief under *Ex Parte Young*, 209 U.S. 123 (1908). *See Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015) ("[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted.").

192.   Section 1373 of Title 8 of the United States Code provides that local government entities and officials "may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual."

193.   In the spirit of cooperative federalism, Texas enacted SB4 in part to effectuate federal immigration law, as expressed in, but not limited to, 8 U.S.C. § 1373.

194.    SB 4 promotes the objectives of 8 U.S.C. § 1373, and the objectives of federal immigration law more generally, by prohibiting government entities or officials from enacting policies that restrict sharing information regarding immigration status and otherwise cooperating with federal immigration authorities, including the Immigration and Naturalization Service, and imposes enforcement mechanisms to achieve those objectives.

195.    SB4 is in harmony with the U.S. Constitution, federal immigration law, and all other federal laws, including but not limited to 8 U.S.C. § 1373.

196.    SB4 does not expressly conflict with the U.S. Constitution, federal immigration law, or any other federal law, including but not limited to 8 U.S.C. § 1373.

197.    SB4 does not impliedly conflict with, or impose an obstacle to, the U.S. Constitution, federal immigration law, or any other federal law, including but not limited to 8 U.S.C. § 1373.

198.    Federal regulation of immigration is not so pervasive as to occupy the field and disallow Texas from passing SB 4.

199.    SB 4 does not violate the Supremacy Clause.

200.    Texas has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

201.    Texas has no adequate remedy at law.

202.    Absent declaratory relief, Texas will continue to be harmed.

## PRAYER FOR RELIEF

WHEREFORE, Texas respectfully requests that this Court enter judgment against Defendants and provide Texas with the following relief:

a.    Declare that SB 4 is valid under the Fourth and Fourteenth Amendments to the United States Constitution and is not preempted by federal law; and

b.      All other further relief to which Texas may be entitled.

Respectfully submitted this the 7th day of May, 2017.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

*/s/Brantley D. Starr*
BRANTLEY D. STARR
Deputy First Assistant Attorney General
Texas Bar No. 24046904
brantley.starr@oag.texas.gov

MICHAEL C. TOTH
Special Counsel to the First Assistant
Attorney General

ANDREW D. LEONIE
Associate Deputy Attorney General

AUSTIN R. NIMOCKS
Associate Deputy Attorney General

DARREN MCCARTY
Special Counsel for Civil Litigation

DAVID J. HACKER
Senior Counsel

JOEL STONEDALE
Counsel

Office of Special Litigation
ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548
(512) 936-1414
(512) 936-0545 Fax

*ATTORNEYS FOR TEXAS*