IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
17 AUG -9 AM 11: 46
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
    DEPUTY CLERK

TEXAS and KEN PAXTON, in his
official capacity as Texas Attorney
General,
              Plaintiffs,

-vs-

TRAVIS COUNTY et al.,
              Defendants.

CAUSE NO.:
A-17-CA-00425-SS

**ORDER**

      BE IT REMEMBERED on the 29th day of June 2017, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court are Defendant Travis County's Motion to Dismiss First Amended Complaint [#26], Plaintiffs State of Texas and Ken Paxton (collectively, the State)'s Response [#30] in opposition, and Travis County's Reply [#33] in support; Defendant the City of Austin's Amended Motion to Dismiss [#27], the State's Response [#30] in opposition, and City of Austin's Reply [#36] in support; Defendant Texas Organizing Project Education Fund's Motion to Dismiss [#62], the State's Response [#71] in opposition, and Texas Organizing Project Education Fund's Reply [#72] in support; Defendant El Paso County's Motion to Dismiss [#64] and the State's Response [#71] in opposition; Defendant the City of El Cenizo's Amended Motion to Dismiss [#65] and the State's Response [#71] in opposition; as well as the State's Motions to Consolidate Cases [##17, 24, 35], Defendants' Response [##21, 22, 39, 40, 48] in opposition, and the State's Reply [#52] in

support.[1] Having reviewed the documents, the governing law, the arguments of the parties at the hearing, and the file as a whole, the Court now enters the following opinion and orders.

## Background

The State filed this action seeking a declaration Senate Bill 4 (SB 4) is constitutional. On May 7, 2017, Governor Abbott signed SB 4 into law. SB 4 prohibits municipalities and their employees and officials from adopting, enforcing, or endorsing any policy that would "materially limit" local police or other officials from enforcing "immigration laws." Am. Compl. [#1] Ex. 1 (SB 4) at 48–49. Specifically, the law requires local law enforcement agencies to cooperate with federal immigration authorities; prohibits these agencies from maintaining policies barring officers from inquiring into an individual's immigration status; requires these agencies to comply with U.S. Immigration and Customs Enforcement (ICE) detainers; and in some cases, requires these agencies to transfer an individual from a Texas correctional facility to federal authorities. *Id.* The State explains it enacted SB 4 "to prevent localities from forming a patchwork of inconsistent policies of federal cooperation across Texas." State's Resp. [#71] at 7. "By ending local policies that block the federal government's ability to enforce immigration law, SB 4 aims to ensure that suspected and convicted criminals are not released back onto the streets and that the respect for the rule of law continues to preserve the safety of citizens throughout the State." *Id.*

Though SB 4 was signed into law on May 7, 2017, the law does not go into effect until September 1, 2017. SB 4 at 59, 60.

---

[1] The Court DISMISSES AS MOOT the City of Austin's Motion to Dismiss [#16] the State's original complaint, Travis County's Motion to Dismiss [#18] and Amended Motion to Dismiss [#19] the State's original complaint, and the El Cenizo's first Motion to Dismiss [#60].

2

I.   **Austin Proceedings**

This lawsuit (the Austin case) was filed on May 7, 2017, just hours SB 4 was signed. In its complaint, the State seeks only declaratory relief that SB 4 is constitutional under both the federal and state constitutions. Compl. [#1]; Am. Compl. [#23] ¶¶ 322–329 (adding claim that SB 4 does not violate the Texas Constitution). The State argues it was justified in bringing this action because, "[l]eading up to the passage of SB 4, numerous local officials vowed legal fights over the legislation, claiming that it was unconstitutional for the State to regulate their varying local policies of noncooperation." State's Resp. [#30] at 2. According to the State, the fact that Defendants' policies remain in place today, together with the fact that Defendants have challenged the constitutionality of SB 4 in the San Antonio case, reveal Defendants "intent to violate SB 4 once it takes effect[.]" *Id.* at 7.

The State's original complaint named as defendants Travis County, Austin, officials from Travis County and Austin,[2] and the Mexican American Legal Defense and Education Fund (MALDEF).[3] On May 31, 2017, the State amended its complaint to add as defendants El Paso County, Texas and the Sheriff of El Paso County in his official capacity (together, El Paso); the City of El Cenizo, Texas, the Mayor of El Cenizo, Texas, Maverick County, Texas, the Sheriff of Maverick County, and Constable Pct. 3-1 of Maverick County (together, El Cenizo); the Texas Organizing Project Education Fund (TOPEF); and the League of United Latin American Citizens (LULAC).

---

[2] Sally Hernandez was sued in her official capacity as the Sheriff of Travis County. The State also sued Austin City Council Members Ora Houston, Delia Garza, Sabino Renteria, Gregorio Casar, Ann Kitchen, Jimmy Flannigan, Leslie Pool, Ellen Troxclair, Kathie Tovo, and Alison Alter; Austin's Mayor, Steve Adler; and Austin's Interim City Manager, Elaine Hart.

[3] The State voluntarily dismissed its claims against MALDEF on June 16, 2017. *See* Notice Voluntary Dismissal [#53].

## II.   San Antonio Proceedings

Following SB 4's passage and the State's near contemporaneous filing of the Austin case, three cases were filed in the San Antonio Division challenging the constitutionality of SB 4. In the first case filed in San Antonio on May 8, 2017, El Cenizo, together with other plaintiffs, filed an action against the State, seeking a declaration that SB 4 is unconstitutional and an injunction prohibiting the State from enforcing SB 4. *See City of El Cenizo v. Texas*, No. 5:17-CV-404-OLG (W.D. Tex. May 8, 2017). On June 6, 2017, Judge Garcia consolidated the *El Cenizo* case with two other cases pending in that division after finding these cases involved the same issues of law and most of the named defendants are the same (collectively, the San Antonio case). *See id.*; *El Paso Cty. v. Texas*, No. No. 5:17-CV-459-OLG (W.D. Tex. May 22, 2017); *City of San Antonio v. Texas*, No. 5:17-CV-489-OLG (W.D. Tex. June 1, 2017). Judge Garcia subsequently permitted several parties to intervene, including the cities of Dallas, Houston, and Austin and Travis County. The plaintiffs in the now-consolidated San Antonio case filed applications for a preliminary injunction. On June 26, 2017, Judge Garcia held a preliminary injunction hearing where the parties submitted evidence and presented arguments as to SB 4's constitutionality.

Meanwhile, Defendants in the Austin case—many of whom are the plaintiffs in the San Antonio case—filed motions to dismiss the State's claims, arguing, among other things, the State has not alleged an injury sufficient to confer standing and the State seeks an impermissible advisory opinion. In response to these motions, the State contends its action is proper under the Declaratory Judgment Act, as the State has standing to assert these claims and the matter is ripe for judicial determination. The State also filed three motions to consolidate this case with the San Antonio case, arguing these cases involve the same legal issues and the first-to-file rule counsels in favor of consolidating the cases in the Austin Division.

These motions have been fully briefed by the parties and are now ripe for consideration.

## Analysis

I.  **Legal Standard**

A motion under Rule 12(b)(1) asks a court to dismiss a complaint for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks omitted). Motions to dismiss under Rule 12(b)(1) challenge a court's "very power to hear the case," and the court may therefore "weigh the evidence and satisfy itself" subject matter jurisdiction exists. *MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (internal quotation marks omitted).

This case was brought pursuant to the Declaratory Judgment Act, which provides, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has held that "the phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). For the Court to exercise jurisdiction over this case, then, it must meet the "cases and controversies" requirement set forth under Article III of the Constitution. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980).

To meet the standing requirement under Article III, the party invoking federal jurisdiction must show (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

5

challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Consol. Cos., Inc. v. Union Pacific R.R. Co.*, 499 F.3d 382, 385 (5th Cir. 2007); *Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Standing to seek declaratory judgment is subject to these same requirements." *BroadStar Wind Sys. Grp. Ltd. Liab. Co. v. Stephens*, 459 F. App'x 351, 356 (5th Cir. 2012) (citing *Bennett v. Spear*, 520 U.S. 154, 162 (1997)).

The general rule is that "standing is to be determined as of the commencement of the suit." *Lujan*, 504 U.S. at 571–72. Though a plaintiff may later amend her complaint, post-filing events generally cannot cure a jurisdictional defect that existed at the time the original complaint was filed. *Camsoft Data Sys., Inc. v. S. Elec. Supply, Inc.*, 756 F.3d 327, 337 (5th Cir. 2014); *see also Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 218 (5th Cir. 2012) ("Although 28 U.S.C. § 1653 and [Rule] 15(a) allow amendments to cure defective jurisdictional allegations, these rules do not permit the creation of jurisdiction when none existed at the time the original complaint was filed[.]").

II.   **Application**

The State seeks a declaratory judgment as to the constitutionality of a statute prior to the law taking effect. Because Defendants move to dismiss this lawsuit for lack of subject matter jurisdiction, the Court does not reach the merits of the State's claim, but instead only examines

whether the claim, based on the record before the Court, can proceed.[4] Because the Court finds the State lacks standing to bring this claim, the Court GRANTS Defendants' motions to dismiss.

The State asserts two primary arguments in an attempt to establish standing: first, because Defendants have standing to challenge the constitutionality of SB 4 in the San Antonio case, the State has standing to bring this declaratory judgment action; and second, the State has shown the existence of imminent injury sufficient to confer standing based on Defendants' alleged intent "to follow a pattern and practice of failing to cooperate with federal immigration officials" after the law goes into effect on September 1, 2017. Am. Compl. [#23] ¶ 239.

In support of its first argument, the State cites a Fifth Circuit case for the proposition that:

> Since it is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action, a party bringing a declaratory judgment action must have been a proper party had the defendant brought suit on the underlying cause of action.

State's Resp. [#71] at 6 (quoting *Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990) (*HAVEN*)). From this passage, the State extrapolates its position that "the proper inquiry is whether [Defendants] have standing to sue Texas," not whether the State has standing to bring this declaratory judgment action. *Id.*

But simply because the declaratory judgment plaintiff is the proper defendant in another suit does not mean it is exempt from Article III's standing requirements in a declaratory judgment action. While the Declaratory Judgment Act "enlarged the range of remedies available in federal courts," it "did not extend their jurisdiction." *Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Indeed, the Fifth Circuit has expressly held that a plaintiff in a declaratory judgment action must satisfy the standing requirements of Article III. *See, e.g., BroadStar Wind*

---

[4] Though the Court does not reach the merits of the State's claim today, it notes that the federal government has the exclusive power to enforce immigration laws, and regardless of its intent, no state or local entity can interfere with the enforcement of these laws.

7

*Sys. Grp. Ltd. Liab. Co.*, 459 F. App'x at 356. Thus, the State cannot sidestep these standing requirements by fashioning a new rule in the pre-enforcement declaratory judgment context where the Court simply asks whether the defendant has standing to sue the plaintiff in a different lawsuit.

The State's second standing argument likewise fails, because the State has not shown the existence of actual or imminent injury. The State alleges it has standing to sue Defendants to ensure SB 4 is enforced once the law takes effect.[5] As evidence of Defendants' impending violation of SB 4, the State cites, among other things, Travis County's written policy that advises officers not to cooperate with federal immigration officials under certain circumstances. According to the State, this policy was issued on February 1, 2017, "well after SB 4 was introduced in the Texas Legislature," and remains in place today. Am. Compl. [#23] ¶¶ 203, 206.

The State's own argument underscores its deficiencies. Because SB 4 does not take effect until September 1, 2017, it is impossible for Defendants to take any action that would violate the not-yet-effective law. The mere fact that a municipal policy was instituted before a law was signed, or that it remains in place prior to the law taking effect, does not equate to a violation of the law.

The State argues, however, that it faces an imminent injury sufficient to confer standing because Defendants have "no plans to change" their policies of non-cooperation with federal immigration officials once SB 4 takes effect. *Id.* ¶¶ 17, 207. In support of this position, the State cites Defendants' public statements of their intent to challenge the constitutionality of SB 4. For

---

[5] Once SB 4 takes effect, the statute provides for a number of robust enforcement mechanisms, including imposing a civil penalty between $1,000 and $1,500 for the first violation and a penalty of not less than $25,000 for each additional violation (where each day constitutes a separate violation), as well as removing an elected or appointed official from office. SB 4 at 50–52. In addition, a sheriff, chief of police, or constable who fails to comply with an immigration detainer request faces potential criminal sanctions. *Id.* at 58.

instance, after the law was signed and the Austin case was filed, both Austin and El Paso County voted to sue the State over the constitutionality of SB 4, and these entities did, in fact, sue the State in the San Antonio case. *Id.* ¶¶ 211, 221. The State also cites public statements issued by individual defendants—again, after the law was signed and the Austin case was filed—such as the Sheriff of El Paso County, who allegedly said "SB 4 is pointless," and the Mayor of El Cenizo, who purportedly stated "SB 4 is 'dangerous and discriminatory' and [] it 'opens up the door to racial profiling against Hispanics.'" *Id.* ¶¶ 220, 231.

But construing Defendants' statements that they intend to sue the State as evidence of their intent to violate the law is untenable. Aside from raising important First Amendment concerns, it does not give rise to an imminent injury.[6] The State's alleged injury turns on the legal consequences of some act that may or may not occur—that is, Defendants' decision to violate the law. The State has produced no evidence that at the time of filing suit, it was clear Defendants planned to violate the law once it takes effect. Expressing public disagreement with a law does not constitute a violation of the law, nor does articulating the desire to challenge the constitutionality of the law equate to a violation of it. The general rule is that a plaintiff must have standing at the commencement of a suit, *see Lujan*, 504 U.S. at 571–72, and the State has not shown an exception to this general rule applies here. Because the State has not shown it faced an imminent injury sufficient to confer standing when it filed this declaratory judgment action, the Court lacks subject matter jurisdiction to hear this case.

The Court's decision today is driven in large part by the well-established constitutional ban on advisory opinions. This ban seeks to ensure that federal courts determine specific disputes

---

[6] In this Order, the State's failure to establish an imminent injury is characterized as a defect in standing, but the Court recognizes this element of the standing inquiry overlaps with the ripeness doctrine, which focuses on whether a legally cognizable injury has yet to occur. Because the Court finds dismissal on standing grounds is appropriate, it does not address the ripeness issue separately.

between parties, rather than hypothetical legal questions, and in doing so, conserve judicial resources.[7] As Austin points out in its reply brief, the State faces the same potential threat every government agency at every level faces when it enacts a new law—the threat that someone may challenge the constitutional validity of the law. That is not a justiciable injury. To hold otherwise would be to "open a Pandora's box and invite every local government to seek a court's judicial blessing" on a law prior to it taking effect. *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 880, 884–85 (N.D. Tex. 2008). The ban on advisory opinions and the related doctrine of standing were devised to prevent just that.

## Conclusion

In light of the foregoing, the Court GRANTS Defendants' motions to dismiss and DISMISSES AS MOOT the State's motions to consolidate.

Accordingly,

IT IS ORDERED that Defendants Travis County's Motion to Dismiss First Amended Complaint [#26], the City of Austin's Amended Motion to Dismiss [#27], Texas Organizing Project Education Fund's Motion to Dismiss [#62], El Paso's Motion to Dismiss [#64], and El Cenizo's Amended Motion to Dismiss [#65] are GRANTED;

IT IS FURTHER ORDERED that Plaintiffs Texas and Ken Paxton's Motions to Consolidate Cases [##17, 24, 35] are DISMISSED AS MOOT;

---

[7] As the Supreme Court explained in *Flast v. Cohen*,

> [T]he implicit policies embodied in Article III, and not history alone, impose the rule against advisory opinions[.] . . . [T]he rule against advisory opinions implements the separation of powers prescribed by the Constitution . . . [and] also recognizes that such suits often "are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaceted situation embracing conflicting and demanding interests."

392 U.S. 83, 96–97 (1968) (quoting *United States v. Fruehauf*, 365 U.S. 146, 157 (1961)).

IT IS FURTHER ORDERED that Defendants the City of Austin's Motion to Dismiss [#16], Travis County's Motion to Dismiss [#18] and Amended Motion to Dismiss [#19], and the El Cenizo's first Motion to Dismiss [#60] are DISMISSED AS MOOT; and

IT IS FINALLY ORDERED that the above-styled cause is DISMISSED WITHOUT PREJUDICE.

SIGNED this the 8th day of August 2017.

*Sam Sparks*
SAM SPARKS
UNITED STATES DISTRICT JUDGE